The next case for argument is 22-1548, ParkerVision v. Vidal. Please proceed. Good morning, Your Honors, and please, the Court. So the two issues I would like to discuss today are, number one, we believe there is an APA violation from the Board, and number two is a claim destruction issue. Both of those are issues of law for the Court to consider, and so I'll start with the first APA violation. Just out of vital curiosity, what happened to Intel? Intel, the party settled. So with regards to the APA violation, there was abuse of discretion here. So what happened is that a new issue was raised for the first time by Intel in their reply brief regarding what non-negligible amounts of energy is. Never saw it, never heard about it before the reply brief. In Sir's reply, we attempted to address the issue. The Board struck anything that we had to say on non-negligible amounts of energy. They wouldn't let us get a word in on that issue. So we had no notice going into prior to the reply. We had no notice of the position. As I understand it in your patented response, you were the ones that construed storage element, which sounds like a very basic term, to have all these very intricate requirements. Number one, it's an energy transfer system, the whole energy transfer system, and two, the storage element stores non-negligible amounts of energy. And then you proposed to say, well, the reference doesn't have an energy transfer system. Was there anything stopping you at that time in your patent owner response from saying, and the reference does not disclose storing non-negligible amounts of energy, only storing negligible amounts of energy? So we did say that. So if you turn to Appendix APPX, start with, so just to be clear, there's two systems that we talked about, voltage sampling systems and energy transfer systems. Those are the two distinguishing systems that we discussed. And so I'll start with the punchline. So if we look at the patent owner's response, APPX 797. So if you look at the first full paragraph, it talks about, it says, the capacitor and TALO, however, are not storage elements because the capacitors of TALO are not elements of an energy transfer system. TALO is a voltage sampling system. So we didn't stop there, right? Because we could have said voltage, energy transfer system. We didn't stop there. We kept going. And we said, as such, the capacitor and TALO are holding elements. So holding elements, and then, and that's, this is the ground, this is our section that we respond specifically to the grounds. And then if you look at APPX 771, we explain what a holding element is. And in that section, we talk about a holding element. It's holding modules and holding capacitance, as used above, identify systems that store negligible amounts of energy. So we didn't just stop with the argument about voltage sampling versus energy sampling or energy transfer system. We went further, and we talked about a holding element, and we described in our argument what a holding element was. So we did address the issue in our patent owner response. But what we didn't have was the other side's position on non-negligible energy until the reply because they didn't offer a claim construction. They didn't offer any discussion of non-negligible energy. The only thing that they said— Well, I guess I'm a little bit confused. You seem to be saying two different things at the same time. Number one, you're saying in your patent owner response, you did in effect make the argument that TALO lacks an element that stores non-negligible amounts of energy by saying something in 797 that refers back to 771. So now you're also saying we couldn't have made that argument until we got to our SIR reply and then saw what the petitioner said in reply. So really, it's either one or the other. Which one do you want to pick? Did you make the argument in your patent owner response? Yes. We made the argument in our patent owner response, and in the SIR reply, we tried to expand upon that based on what was said for the first time in reply. So we were expanding upon what we already said. Okay. So then for us, it boils down to— If you think the board was reasonable in reaching a conclusion that what you've said here at 797 that may silently, in an unstated way, refer back to something you said in 771 was not in fact an argument about whether TALO has a storage element that stores non-negligible amounts of energy, right? Right, right. If you think the board was reasonable in concluding that you didn't make that argument, then there isn't an APA problem. Well, I still believe there is. And the reason why there is is because it's similar to the Nuvasiv case. So in the Nuvasiv case, and we cite that in our brief on page 64 of our opening brief, it's Nuvasiv, Inc., 841, F3rd, 966. And in the Nuvasiv case, a very similar situation happened. In the Nuvasiv case, what happened is that in the petition, the petitioner made statements about very specific figures of a piece of prior art. And what happened then in the patent owner respondent relied on those very specific figures. And then in the reply, for the first time they raised a new figure. And this court said it's an APA violation because what happened is the board didn't allow the patent owner in the oral argument, at that time there were no survey replies, didn't allow the patent owner during oral argument to make the argument. And that's the same case we have here. So even regardless of the position of whether or not, again, we believe that we made the argument in our patent owner response, but putting that aside under the Nuvasiv case, we're entitled to, under the APA, entitled to respond to an argument that we've never heard before, we had no knowledge of. We're entitled to say, you know, they raised three very specific points. So for the first time in the reply brief, we start seeing calculations of non-negligible amounts of energy. We saw all of a sudden a position of the size of the capacitor matters. We saw a position about integrating energy. And I'll talk about that real quickly and why that's not right, but we had to respond to that. Let's assume for the moment that the board was reasonable in concluding that you didn't make this argument in your patent owner response about Taylor lacking non-negligible amounts of energy being stored. Was there something, is there an explanation for why you couldn't have made that argument in your patent owner response? Well, we didn't know the specific argument. Because, you know, you were the side that came up with this construction, this, you know, energy transfer system stores non-negligible amounts of energy. And then you went forward and said Taylor doesn't have an energy transfer system. What was stopping you at that point in time from saying, and Taylor doesn't store non-negligible amounts of energy in his law? Well, just to be clear, we believe what we said did address the issue. Right, we're past that. Right, right. So beyond that, we didn't know what positions, we didn't know what positions the other side was going to take because they never talked about it before. So we, the only thing we were doing was under Nuvesa, we were reacting to what we were presented with. We never heard any of these issues before. So we had no reason to do calculations because they didn't have any calculations. We didn't have reason to talk about integration and we didn't have reason to talk about size of capacitors because it was never discussed. And the reality is, is that when you look at what they argued, you could think about, so we're talking about capacitors, right? Capacitors are what the storage element is or the holding elements are. They're just capacitors. It's an electronic circuit. Think about a capacitor like a bucket, okay? A capacitor stores energy. That's what it does. Right, it stores energy. But think about a capacitor like a bucket of water, right? So depending on how I use that bucket and what system it is, that depends how much energy it stores. I could use the bucket of water to put under my sink to catch drips of water. I could use the same bucket of water to wash my car and fill it up right to the top. So you can't just look at a capacitor and say, oh, the capacitor stores non-negligible amounts of energy. If I use it in a system like my car, it's going to be a significant amount of water because I need a full bucket. If I'm using it to catch drips under my sink, it's going to be little drips. And just to be clear, the analogy is voltage sampling is the little drips. Energy sampling is that full bucket. So you can't just look at a capacitor and tell what the capacitor is doing. You have to look at the system it's in. That's why we argued about – that's why we put the concept of energy transfer system into the definition. What they did is they came and raised arguments in the reply brief. And in the reply brief, they said, number one, look at the size of the capacitor. Well, I can't look at the size of the bucket because the same bucket I used to wash my car is the same size of the bucket as I used to catch drips. So just looking at the size of the capacitor doesn't tell you anything. They then argued, look at the volume essentially of the capacitor, how much it could store – could store, not actually store, could store. And the total volume – so he calculated – their expert calculated the volume of the bucket. But that doesn't tell me anything because I have to look what the system is in. So we said that's wrong. And then he said, well, you could – if you integrate the energy, then what happens is you – it integrates energy. But integration doesn't tell you anything because if I integrate drips of energy into a bucket, it still could be a little. If I integrate lots and lots of water as I'm filling up my bucket for washing my car, that's a lot of energy. So we had to address that issue. It was wrong. We needed to address it. We didn't have the ability to address those specific issues. And that's what we tried to do in our SIR reply and got blocked at every way by the board. And to us, that's in violation of the APA. Am I correct? You've abandoned the Graham argument? Yes. And so going back to the point that I was making is that that was the first time we had – right now Intel, well, now the solicitor, was arguing lexicography. So obvious, lexicography. And they point to something Parker Vision said from 2016, like six years ago. So they knew all that information, but they didn't provide a definition. And then – so basically we got sandbagged. They didn't provide a definition. There was no – they could have. They're saying it's lexicography. So obvious. Parker Vision said something six years prior. They had all that evidence. And they were completely silent in their opening – in their petition. And then they said nothing. And then we said – at that time we said, no, this is what the definition should be. And we said it has to be an element of an energy transfer system. There is no lexicography here. And, you know, because the board – and I'll get in the second issue of lexicography. But that was the first time we had the ability to address the issue. And that's what we were trying to do. You almost didn't believe us at the time. Maybe I could go to the lexicography issue, if that's okay, unless somebody has questions on the first issue. I'm curious. The claim, you know, it doesn't say anything about an energy transfer system. Do you have other claims that actually call out energy transfer systems? Not in this patent. I don't think so. I'm not sure. Or, I mean, I'm sure there's some big endless family of patents here. There may – I don't know if there's another patent that specifically says the word energy transfer system in it. I don't know. So getting here, I understand your position that storage element is like specialized lingo for basically a capacitor in an energy transfer system. Right. And the first question I have is, is there a case out there that says whenever there's a term in a claim for a component that exists only in a particular environment, then you should read into the claim not only that specialized component, but all of the other components that make up that environment. And so this little term for this little component carries on its back, I don't know, 10 other components that exist, coexist with this component in that environment. Phillips. You have to read the specification. I don't think Phillips on its facts had that kind of situation. So the bottom line is you look at the specification as a whole. Can I just raise one issue to the first point? Because before I forget, because I think it's important for the – sorry, just pivot, and then I'll come right back. I'm not trying to avoid the question. I'll be here. Okay. So the one issue that I want to address is not only did the Patent Board exclude our evidence, right, but they relied on the argument, only the argument that was made in the petitioner's reply for the first time. So they didn't go back to what was said in the petition. They went back to the issue that was raised in the reply, and then they prevented us from talking about it. So that lines up with the Nuvasiv case, which is exactly what happened, is that the issue that they couldn't – it was the exact point that was raised in the reply in Nuvasiv that was the basis for the Patent Board's decision, and that's exactly what happened in this case. The things that were put into the reply brief for the first time was exactly what the Patent Office relied upon. So sorry about that. Now going back to the question that you asked. So in terms of the – let's go through the specification, because I am not – this specific – I'm not aware of a case. You're not aware of a case. I'm not aware of a case. I'm not aware of a case, sitting in this specific thing you asked. I'm not aware of a case. However, I do think Phillips is relevant because if you look at the specification as a whole – so the question is, is there lexicography? Our position is that there is no lexicography. There is a single – The storage element gets its plain and ordinary meaning, which is just an element that stores – No, I'm sorry. There is a single sentence that the Board points to the lexicography. It's not lexicography. It's comparative. If you look at the whole paragraph, if you look at the context of the specification, the specification talks about two systems – energy transfer systems and sample-and-hold systems. Just the Board's statement, the Board's construction, says an element of a system – any system in the whole world, any electrical system in the world that stores non-negligible amounts of energy. That can't be correct. The patent is not that broad. The patent only talks about – and just to be clear, if you're limiting it to – that construction cannot be correct. The patent is not that broad. And if you look at just, let's say, down-conversion systems – Well, the claim on its face looks pretty darn broad. And then it's 64 columns long. It doesn't say anything about the storage element. You have to look at 128-column patent incorporated by reference before you dig through that whole thing and find a particular interesting paragraph that talks about storage modules. I mean, this is not exactly friendly to the public notice function of a claim. No one would know, just looking at the claim, that it has all this stuff about an energy transfer system. Well, it's just that – what you would know is that the 551 patent is incorporated by reference, and nobody disputes the Board. Nobody disputes that the 551 patent is incorporated by reference. And that has a very specific section. There's different sections in the patent dealing with storage elements and energy transfer systems. Basically, there's two sections in the patent. There is an energy transfer system section, and there's a whole – I could point you to the appendix where it actually lays it out on APPX 5207 and 5208. There's literally only two systems. That's it. That's all that's talked about in the patent. Two systems. Sample and hold systems, energy transfer system. That's it. The patent cannot be broad enough. If you're looking for down-conversion systems, you could have heterodyne, homodyne systems, energy transfer systems, voltage sampling, or sample and hold systems. The way the Board construed it, to be any system ever, that's just not what the patent says. It's not that broad. The patent distinguishes over heterodyne and homodyne systems, and it talks about two systems. So the Board's construction is way too broad. And going back to your point, Your Honor, if you – so I gave the citations, but if you go to the specific paragraph, the paragraph's very clear. It tries to distinguish between when you have sample and hold systems that use holding elements that hold negligible amount of energy, and when you have energy transfer systems that have storage elements and store non-negligible amounts of energy. And it spends huge volumes of pages discussing the distinguish between the two. And then when you get to the specific paragraph, by the way, that paragraph that we've all talked about, that's in a section on energy transfer. It's actually in a section called Introduction to Energy Transfer. That term, when you look at this, storage element is specifically directed to an energy transfer system. It is not directed to anything else. There's only two things in the – there's only two systems in the specification. It's not – if it's not a holding – it's either a holding element or a storage element, you're either associated with a voltage sampling or a sample and hold system, or you're associated with an energy transfer system. And you're way beyond your rebuttal. Okay. Thank you, Your Honor. Thank you. May it please the Court, I'd like to start with a question that Judge Chen asked earlier on the claim construction issue about whether there are other claims in either the 444 patent or the family that actually claim an energy transfer system. And if you look at the 551 patent, basically all of the claims claim an energy transfer system. And they show that the patentee had the ability and the knowledge of how to claim an energy transfer system and did so in the 551 patent. So, for example, in claim one of the 551 patent, it recites a method for generating a lower frequency signal from the transferred energy from the carrier signal, which is an energy transfer system. Claim two is generating an energy transfer signal, having the aliasing rate, and using the energy transfer signal to transfer the energy from the carrier signal. And this goes on and on, including, you know, there's recitations of what the energy transfer signal is made up of, you know, the non-negligible aperture of the pulses, etc., etc. So all of those details that they're trying to incorporate into claim three, you can find those in the claims of the 551 patent. So if they wanted all of that detail in their claim, they should have put it in there. There are over 200 claims in 551, right? Correct. And if you look at, I mean, looking at the 551 patent, looking at, you know, starting at claim one, and, you know, there's a lot of dependent claims that depend on claim one, claim 64, claim 68, claim 74. All of these recite the elements of an energy transfer system. The 551, that's not a parent patent of the 444 here, is it? No. It's incorporated by reference. But still, it's the same patentee here. And so they did claim an energy transfer system, it's just in a different patent. Do you want to—your friend spent most of his time on the APA issues. Do you want to do it again? Sure. On the APA issue, I guess the starting point to me, which I didn't hear from the other side, is the board's rule in 37 CFR 42.23B, which says that no new evidence is allowed in a SIR reply. So the default rule is that you cannot introduce new evidence in a SIR reply. You can file a motion, though, right? Correct. You can file a motion, you can ask the board to do so, and the board's decision points out they didn't do that here. They just filed a SIR reply with their new evidence, and the new evidence was a whole new set of calculations about energy storage and capacitance. So at the get-go, you know, it's—you can resolve this issue by saying that they didn't follow the rule and they didn't ask for permission to not apply the rule. So—but even so, I think that— So what struck—or what was just the attachments, the declarations, and the new evidence was the argument? It was—from my understanding, it was Exhibit 2022, which was a number of pages of calculations showing that Intel's experts' calculations on energy storage were incorrect, and then their SIR reply— Alleging. Alleging, excuse me. And then their SIR reply, you know, presented argument based on this evidence. So the board struck both the argument in the SIR reply and the exhibit. I guess the point here is that in the way that this—the IPR system is structured, you need to make an—once you have the ability to make an argument, you need to make it in the first opportunity you have. So Intel filed their petition and didn't offer a claim construction for storage element, which is not required under the rules. And then the patent owner response comes and they offer this claim construction, and the claim construction includes the requirement of storing non-negligible amounts of energy. At that point, they had sufficient evidence and sufficient ability to make any argument they wanted about that claim construction. The only argument they made about the claim construction is that TALO does not disclose an energy transfer system. They could have also said, and by the way, let's look at TALO's capacitors and see how much energy they store, and, you know, here's our evidence showing they don't store non-negligible amounts. But they didn't do so. And so then Intel comes back in their reply, and now they have this claim construction that's been presented, and they disagree with the energy transfer system part of it, but they agree with the non-negligible energy part of it. And so they take that agreed upon part of the construction, and they present evidence why the prior art meets that limitation. It's just too late now in the game for Parker Vision to use the SIR reply to offer this evidence they could have offered earlier. And so beyond the fact that Parker Vision's SIR reply violated the board's rule, there's nothing unfair or underhanded about the way that the board dealt with this. Going back to the claim construction issue, I just want to point out that there are really three pieces of evidence that resolve this case and show why the board's construction was correct. The first one that we talked about were the claims in the 551 patent, which show how to claim an energy transfer system. The second one is the specification, which, as the board found, includes an explicit definition of the term storage module. And, you know, I think it's consistent with this board's case law that says that when you use the word refers to in the specification, it's typically a definitional language. So here, you know, they use the word saying storage modules and storage capacitances refer to systems that store non-negligible amounts of energy from an input EM signal. And then further, they reiterate this point at appendix page 5251, the bottom of column 99. It says the storage modules 6506 and 6716 store non-negligible amounts of energy from the EM signal 1304. And then at the top of column 100, it says the goal of the storage modules 6506 and 6716 is to store non-negligible amounts of energy transfer from the EM signal 1304. So we have multiple instances in the specification supporting the board's construction. And then the final point, which was not discussed in the opening, is that in an earlier IPR, Parker Vision agreed with the board's construction. And specifically, Parker Vision stated that the specification provides an explicit definition of the term storage module. This is them referring to the 551 critical paragraph, right? Correct, and this is appendix page 4876. And then they quote that critical paragraph, and they say, the incorporated 551 specification explicitly defines a storage module and draws the distinction between storage modules and holding modules. And whether you use broadest reasonable interpretation or Phillips, you know, when you've got lexicography in the specification, you land on the exact same construction. That's correct, Your Honor, and I haven't heard really any explanation about how you can reconcile that position with their current position. So I think it's those three pieces of evidence which are pretty, in my view, pretty clear and straightforward support the board's construction. That doesn't count as prosecution history, does it? Because whatever patent that was going on in that 2014 RPX IPR, that comes from a different patent family. Correct. Yeah, I mean, that was in an IPR proceeding and a different patent that also incorporated the 551. So it's not intrinsic evidence. Maybe it's extrinsic evidence? I mean, if it's not intrinsic, I guess it has to be extrinsic. But I think it's a special kind of extrinsic evidence because you have the party itself contradicting their current position. Whether there's an estoppel, no one got into that here, so I'm not going to take that position. But it's pretty good evidence when the party says one thing and then switches their position later on. Thank you. So I'll go backwards. I'll start with where he ended off and then I'll try to work my way through. I want to ask you a question. Yes, sir. The motion to exclude, Exhibit 2022, those were attorney-prepared exhibits for a deposition. Correct. And just to be clear, that 2002 was not, contrary to what counsel said, was not the basis of all the arguments we put in the surreply. That was not it. That was something different. Okay. The Redbridge said that those were erroneous, that the calculations were erroneous. Well, he actually started to talk through them because the reason why we created that exhibit is because you could probably, well, I don't know if you have it, but they're very long equations. I do have it. Oh, they're very long equations. We couldn't put it on the record. So we weren't really creating an exhibit. We were using it as cross-examination, and the board said you can't do it. But that was the only way we could cross-examine them on formulas to show the formula that he used. All he did was calculate the volume of the bucket. He didn't use the formulas that you would use to calculate the volume of the bucket in a system, in a particular system. And so that's why we created that exhibit. But just to be clear, contrary to what counsel said, that is not all of the arguments that we made in the surreply. That's – I don't even know – I don't know how much that was in the surreply at all. It's an exhibit to the surreply. It's an exhibit in the surreply, but it's not the basis of all the arguments. We responded to all the – The board was very clearly exercised by your failure to apply for permission. Correct. But just to be clear, what they excluded were arguments, not exhibits, not evidence. It was arguments that they excluded. So the only evidence – But you're saying not arguments dealing with the exhibits. Correct. Other arguments. Correct. They excluded the arguments. In terms of changing positions on the 2014 IPR, just to be clear, Parkovision's definition as objective evidence that we didn't think it was lexicography, just that last sentence that we're talking about, we didn't use the exact language of that last sentence. We actually changed the language when we proposed the construction. We proposed a construction that's an apparatus that stores non-negligible amounts of energy from the carrier signal. That is different than that last sentence. If we really meant to say it was lexicography, just that last sentence, there would be no reason why we would have changed the language of the lexicography. And in terms of what we said in that 2014 decision, we said the incorporated 551 specification explicitly defines a storage module and draws a distinction between storage modules and holding modules. When we made that statement, explicit definition and distinction, we cited the whole entire paragraph. The distinction that we were referring to were the underlying paragraphs. There's paragraphs that are underlined that talk about the distinction between holding elements and storage elements. So what Park Revision was talking about in 2014 was they were talking about the distinguishing features, but that whole paragraph, the disputed paragraph that we're talking about, that entire paragraph provides the context for our definition. That paragraph starts off talking about energy transfer systems. That paragraph is in the section about energy transfer systems. The paragraphs that council cited about, oh, there's other paragraphs, I think it was in column 99 and 100. I'm getting a little lost. Are you saying in the 2014 IPR, you took a position that storage module includes an energy transfer system? That was part of your proposed construction? No, just, sorry, no, that was not. It was just an apparatus that stores non-network. Correct, because at that time, we didn't say it was, we didn't say just that one sentence of lexicography. And at that time, the BRI standard control, right? Okay. Thank you very much. Thank you.